FILED

2022 Apr-08  AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TRACEY DOSS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 2:20-cv-00584-ACA** |
| | ] | |
| **TRANS UNION, LLC, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Tracey Doss's credit report, compiled by Defendant Trans Union, LLC, indicated that she disputed a tradeline from Defendant National Credit Adjusters, LLC ("NCA"). Although Ms. Doss informed Trans Union that she no longer disputed that tradeline, her credit report continues to reflect the dispute. She alleges NCA is liable under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), for negligently and willfully failing to conduct an investigation of the dispute ("Counts Seven and Eight"), and that Trans Union is liable under the FCRA for negligently and willfully failing to reinvestigate the dispute and failing to ensure maximum possible accuracy of the information it reported ("Counts Nine and Ten").[1]

---

[1] Ms. Doss had also asserted a claim against NCA under the Fair Debt Collection Practices Act, but she abandoned that claim. (Doc. 67 at 2, 14–15).

NCA moves, under Federal Rule of Civil Procedure 12(c), for judgment on the pleadings on the ground that Ms. Doss fails to state a claim. (Doc. 60). Because Ms. Doss has adequately alleged that NCA violated the FCRA, the court **DENIES** that motion.

Trans Union moves, under Rule 12(b)(6), to dismiss the claims against it for failure to state a claim. (Doc. 51). Because Ms. Doss has adequately alleged negligent violations, but has not adequately alleged willful violations, the court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. The court **WILL DISMISS** Count Ten, which alleges Trans Union willfully violated the FCRA, **WITHOUT PREJUDICE**.

## I.     BACKGROUND

As the court must do on a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings, the court accepts as true the facts alleged in Ms. Doss's amended complaint and construes them in the light most favorable to her.[2] *See Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012); *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

At some point before October 2020, Ms. Doss disputed tradelines with NCA and another company. (*See* doc. 31 at 4 ¶ 18). In October 2020, she obtained her

---

[2] Ms. Doss's amended complaint contains other factual allegations regarding her Equifax credit report. (*See* doc. 31 at ¶¶ 8–16). Those allegations are not relevant to the motions presently before the court.

Trans Union credit report and noticed that it reflected disputes with the two tradelines. (Doc. 31 at 4 ¶ 19). Because Ms. Doss no longer disputed the tradeline, she sent Trans Union a letter in November 2020 stating that she did not dispute the tradelines and requesting the removal of the disputes from her report. (*Id.* at 4 ¶¶ 18, 20). Trans Union forwarded her letter to NCA and the other company. (*Id.* at 4 ¶ 21). But as of January 2021, Ms. Doss's credit report continued to reflect the dispute, making her ineligible to obtain a mortgage loan or refinancing. (*Id.* at 5 ¶¶ 22–23).[3]

## II.   DISCUSSION

Trans Union moves to dismiss the claims against it under Rule 12(b)(6) (doc. 51) and NCA moves for judgment on the pleadings under Rule 12(c) (doc. 60). Although the name of each motion differs, in this case the standard applied is the same: whether Ms. Doss has stated a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c) . . . .). Thus, the court

---

[3] No party has challenged Ms. Doss's standing to sue, but the court has reviewed the amended complaint based on the court's independent obligation to inquire into its own subject matter jurisdiction. *See Laufer v. Arpan* LLC, __ F.4th __, 2022 WL 906511, at *5 (11th Cir. Mar. 289, 2022). The court finds that, at the pleading stage, Ms. Doss has alleged—barely—facts that establish her standing to sue. (*See* doc. 31 at 5 ¶¶ 23–24); *see Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 942 (11th Cir. 2021). However, Ms. Doss must continue to establish standing at every stage of the case "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). Ms. Doss should be prepared to present evidence establishing her standing after discovery.

must determine whether the well-pleaded allegations in the amended complaint state "a claim to relief that is plausible on its face." *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court will address the claims against NCA first, followed by the claims against Trans Union.

1. Claims Against NCA

In Counts Seven and Eight, Ms. Doss asserts that NCA negligently and willfully violated 15 U.S.C. § 1681s-2(b) by failing to conduct a proper reinvestigation of her notice that she retracted her earlier dispute.  (Doc. 31 at 12–14).  NCA moves for judgment on the pleadings on two grounds.  First, it contends that 15 U.S.C. § 1681s-2(a)(3) requires a furnisher to report any disputes a consumer makes directly to the furnisher, so NCA could not report a retraction of the dispute unless Ms. Doss made the retraction directly to it.  (Doc. 61 at 8–11).  Alternatively, it argues that it reasonably investigated by checking its internal documents about Ms. Doss's dispute, which reflected only that Ms. Doss had disputed the tradeline, and it had no obligation to look outside its files or contact Ms. Doss.  (*Id.* at 11–12).

15 U.S.C. § 1681s-2 sets out the responsibilities of so-called "furnishers of information," such as NCA.  Subsection (a) prohibits furnishers from providing

4

information to credit reporting agencies that the furnisher knows or has reasonable cause to believe is inaccurate, *id.* § 1681s-2(a)(1), and imposes a duty on furnishers to correct and update information, *id.* § 1681s-2(a)(2).   Subsection (a) further provides that "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."   *Id.* § 1681s-2(a)(3).

Consumers may report disputes in two ways: directly and indirectly. Subsection (a) permits consumers to report disputes directly to a furnisher and requires the furnisher to investigate, review all relevant information provided by the consumer, and notify consumer reporting agencies of any inaccurate information. 15 U.S.C. § 1681s-2(a)(8)(E).   Subsection (b) permits consumers to dispute information through consumer reporting agencies.   *Id.* § 1681s-2(b).   Under that subsection, a consumer first notifies the consumer reporting agency of a dispute with any information contained in the consumer's file. 15 U.S.C. § 1681i(a)(1)(A).   The agency must then promptly notify the furnisher of the consumer's dispute.   *Id.* § 1681i(a)(2)(A).   Once a furnisher receives notification of a consumer's dispute from a consumer reporting agency, the furnisher must investigate, review all the information provided by the consumer reporting agency, and, if the information is

inaccurate or incomplete, report the results of the investigation. *Id.* § 1681s-2(b)(1). A consumer may sue a furnisher for failing to investigate a dispute forwarded by a consumer reporting agency but may not sue a furnisher for failing to investigate a dispute that she filed directly with the furnisher. *Id.* § 1681s-2(c).

NCA relies on two district court opinions, which found that a consumer cannot hold a furnisher liable for failing to notify a consumer reporting agency of the retraction of a dispute unless the consumer retracts the dispute directly with the furnisher. *McGee v. Equifax Info. Servs., LLC*, 2019 WL 2714505, at *2–3 (N.D. Ga. Mar. 19, 2019), report and recommendation adopted, 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019); *Roth v. Equifax Info. Servs., LLC*, 2017 WL 2181758, at *3 (D. Ariz. May 17, 2017). Those courts in those cases reasoned that because § 1681s-2(a)(3) requires a furnisher to report any dispute a consumer makes directly to the furnisher, the furnisher must continue to report the dispute until the consumer retracts the dispute directly with the furnisher. *McGee*, 2019 WL 2714505, at *2–3; *Roth*, 2017 WL 2181758, at *3. As a result, according to *McGee* and *Roth*, the furnisher cannot be liable for failing to report a retraction made indirectly (through a consumer reporting agency) to the furnisher because a furnisher "cannot be liable for both reporting Plaintiff's account as disputed and not reporting it as disputed." *Roth*, 2017 WL 2181758, at *3; *see also McGee*, 2019 WL 2714505, at *2–3.

The court does not find *Roth* and *McGee* persuasive.  Subsection (a)(3) does not state that a furnisher must continue to report a consumer's dispute until the consumer contacts the furnisher directly to retract the dispute.  Nor does the rest of the statute support such a reading.  *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019) ("The whole-text canon refers to the principle that a judicial interpreter should consider the entire text, in view of its structure and of the physical and logical relation of its many parts, when interpreting any particular part of the text.") (quotation marks and alteration omitted).  The immediately preceding paragraph (a)(2) requires a furnisher who meets certain requirements to correct or supplement any information the furnisher "determines is not complete or accurate."  15 U.S.C. § 1681s-2(a)(2).  That paragraph does not speak to the source of the furnisher's determination, only to the furnisher's determination that the information is incomplete or inaccurate.  Under paragraph (a)(2), a furnisher who learns that a consumer no longer disputes information has a duty to correct the dispute notation by the consumer reporting agency, regardless of how the furnisher learns that fact.  In addition, absent an exception not applicable at this stage of this case, subparagraph (a)(1)(A) prohibits a furnisher from reporting information the furnisher "knows or has reasonable cause to believe . . . is inaccurate."  *Id.* § 1681s-2(a)(1)(A).  Like other parts of subsection (a), subparagraph (a)(1)(A) does not state

that a furnisher's knowledge is limited to information the consumer provides directly to the furnisher.

In short, this court disagrees with the conclusion reached in *Roth* and *McGee* that paragraph (a)(3) requires a furnisher to continue to report a dispute until a consumer contacts the furnisher directly to retract the dispute. The text of § 1681s-2(a) does not support that reading. Accordingly, the court rejects NCA's argument that Ms. Doss's failure to directly contact NCA defeats her claim.

NCA's next argument also derives from the *Roth* decision. In this argument, NCA asserts that its investigation was reasonable because its internal files showed only that Ms. Doss had disputed the tradeline, and it had no obligation to look outside its files or contact Ms. Doss. (Doc. 61 at 11–12). In *Roth*, the district court found that a furnisher "had nothing to investigate upon receipt of the notice from [a consumer reporting agency]" because "[t]he last [the furnisher] heard directly from [the consumer] was that she disputed the debt and that is all any investigation of [the furnisher]'s files would have turned up." *Roth*, 2017 WL 2181758, at *3.

Again, the court does not find the *Roth* decision persuasive. Section 1681s-2(b) expressly requires a furnisher who is notified of a consumer's dispute by a consumer reporting agency to "review all relevant information provided by the consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1)(B). By its terms, the statute requires the furnisher to look at something outside its own files. And in this case,

Ms. Doss alleges that she sent Trans Union a letter stating that she no longer disputed the tradeline, that Trans Union forwarded her letter to NCA, and that NCA received the letter. (Doc. 31 at 4 ¶¶ 20–21). Although NCA denies that allegation, the court must accept it at true at this stage in the proceedings. *Perez*, 774 F.3d at 1335. Under the facts alleged, NCA was obligated to review Ms. Doss's letter. 15 U.S.C. § 1681s-2(b)(1)(B). Thus, according to Ms. Doss's allegations construed in the light most favorable to her, a reasonable investigation by NCA would have revealed that Ms. Doss no longer disputed the tradeline, prompting NCA's duty to correct the dispute notation. *Id.* § 1681s-2(b)(1)(D)–(E).

Although no party cites it, the court has located an unpublished Eleventh Circuit decision involving almost identical facts. *White v. Equifax*, 2021 WL 6102458, at *1 (11th Cir. Dec. 23, 2021). The only difference is that in *White*, the Court had before it the consumer's letter to the consumer reporting agency retracting her dispute of the tradeline. *Id.* The *White* Court held that the plaintiff failed to state a claim against the furnisher because the furnisher's investigation was reasonable as a matter of law. *Id.* at *2–3. The Court explained that the consumer's letter, which the consumer reporting agency forwarded to the furnisher, did not put the furnisher on notice that she was "resolving (or attempting to resolve) a dispute with" the furnisher, so the furnisher "reasonably understood [the letter] as a request by the [consumer reporting agency] to verify that their reporting about the status of [the

plaintiff]'s account matched the status of [the plaintiff]'s account in the bank's official records." *Id.* at *2. The Court, relying on a Seventh Circuit case, held that although the furnisher could have contacted the plaintiff to inquire about whether she was attempting to resolve the dispute, the FCRA did not require the furnisher to do so. *Id.* Finally, the Court pointed out that the plaintiff's letter was "far from clear" because it was "internally contradictory." *Id.* at *3.

The Eleventh Circuit recently reminded district courts that "unpublished opinions may be cited as persuasive authority," but "they are not considered binding precedent." *McNamara v. Gov't Emps. Ins. Co.*, __ F.4th __, 2022 WL 1013043, at *4 (11th Cir. Apr. 5, 2022) (quotation marks omitted). This court does not find *White* persuasive. The *White* decision did not engage in an analysis of the statutory language, but instead depended on the particulars of the way the consumer worded her letter to the credit reporting agency. Moreover, the *White* decision relied on *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005), to find that the furnisher's investigation was reasonable as a matter of law. *White*, 2022 WL 1013043, at *2. But this court believes *Westra* is distinguishable.

In *Westra*, someone stole the plaintiff's identity and opened several accounts in his name. 409 F.3d at 826. The plaintiff disputed one account directly with a credit reporting agency, which sent to the furnisher a consumer dispute verification that did not reference the fraud or identity theft and did not include any of the

documentation the consumer had provided.  *Id.*  The furnisher verified the accuracy of the account information.  *Id.*  The plaintiff then sued the furnisher for violating the FCRA.  *Id.* at 826–27.  The Seventh Circuit concluded that the furnisher was entitled to summary judgment because its investigation "was reasonable given the scant information it received regarding the nature of [the plaintiff]'s dispute."  *Id.* at 827.  The Seventh Circuit noted that a more thorough investigation might have been warranted if the credit reporting agency had provided the furnisher all the information, but that the furnisher was not required to "automatically contact every consumer who disputes a debt."  *Id.*

Unlike *Westra*, this case is at the pleading stage, and Ms. Doss has alleged that her letter expressly retracted the dispute, and that Trans Union sent the letter to NCA.  In following *Westra*, the *White* decision did not discuss these factual distinctions or the differences in the procedural history.  *See White*, 2021 WL 6102458, at *2.  For these reasons, the court finds *White* unpersuasive and declines to follow it.

Neither of the two arguments NCA has put forward warrant dismissing Ms. Doss's claim.  Accordingly, the court **DENIES** NCA's motion for judgment on the pleadings.

2.  Claims Against Trans Union

In Counts Nine and Ten, Ms. Doss asserts that Trans Union negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to maintain or follow reasonable procedures to assure maximum possible accuracy of the information it reported and that it negligently and willfully violated 15 U.S.C. § 1681i by failing to conduct a proper reinvestigation of her retraction of the dispute with NCA and the other furnisher.  (*Id.* at 14–16).

Section 1681e requires consumer reporting agencies preparing a consumer report to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  A plaintiff asserting that a credit reporting agency is liable for failing to follow such procedures "must show that the agency's report contained factually inaccurate information, that the procedures it took in preparing and distributing the report weren't 'reasonable,' and that damages followed as a result." *Losch*, 995 F.3d at 944.  Section 1681i requires credit reporting agencies to conduct reasonable "reinvestigations" of the accuracy or completeness of information in a consumer's file if a consumer disputes that information.  15 U.S.C. § 1681i(a)(1)(A).  "The elements of a claim under § 1681i—which focuses on the consumer's credit 'file' rather than his credit 'report'—are the same [as under § 1681e], except that the plaintiff needn't show that the agency prepared and distributed a report." *Losch*, 995

F.3d at 944.   Trans Union's motion to dismiss does not address the difference between a claim under § 1681e and § 1681i, but instead argues that both claims should be dismissed for the same reasons: because Ms. Doss did not retract her dispute directly with the furnishers, because the dispute notation is not "information" as that term is used in the FCRA, and because Ms. Doss has not alleged facts showing willfulness.  (Doc. 51 at 11–25).

Trans Union's first argument is that including Ms. Doss's retraction of her dispute is not an inaccuracy.  (Doc. 51 at 11–17).  The argument proceeds in several steps.  First, § 1681s-2(a)(3) requires a furnisher to report a consumer's dispute of the completeness or accuracy of information.  (*Id.* at 11–12).  Second, § 1681c(f) requires a consumer reporting agency notified under § 1681s-2(a)(3) to "indicate that fact in each consumer report that includes the disputed information."  15 U.S.C. § 1681c(f).  (Doc. 51 at 12).  Thus, Trans Union argues, Ms. Doss had to notify the furnishers of her retraction of the disputes and could not retract her disputes through Trans Union, so Trans Union cannot be liable for continuing to note the dispute.  (*Id.* at 12–17).

This argument depends in part on the same district court cases NCA relied on in its motion for judgment on the pleadings.  (*See* doc. 51 at 13).  As the court explained above, the court does not find those decisions persuasive.  Moreover, Trans Union's argument depends on the court assuming that Ms. Doss initiated the

dispute with the furnishers instead of with Trans Union.[4]  (*See id.* at 13–14).  But Ms. Doss does not allege in her complaint that she filed her initial disputes with the two furnishers at issue.  (*See generally* doc. 31 at 4 ¶¶ 17–23; *id.* at 14–18).  She has—deliberately or not—left that ambiguous.  On a motion to dismiss, the court must construe Ms. Doss's allegations in the light most favorable to her.  *Butler*, 685 F.3d at 1265.  Drawing the inference that Ms. Doss disputed the accounts directly with the furnishers would be an inference drawn against her, which the court cannot do at this point.  Accordingly, the court rejects Trans Union's first argument in support of dismissal.

Trans Union's second argument is that is that a dispute notation is not "information," and reporting a dispute cannot be an "inaccuracy" under the FCRA.  (Doc. 51 at 17–21).  In support of this argument, Trans Union relies entirely on a magistrate judge's report and recommendation in *Hardnett v. Equifax Info. Servs., LLC*, 2021 WL 9598943, at *4 (N.D. Ga. Dec. 16, 2020), in which the magistrate judge recommended finding that "information" means a consumer's "identifying information, credit account history, and certain public records," but not "information mandated by the statute for inclusion at the instigation of the consumer for her own

---

[4] NCA attached to its answer some evidence indicating that Ms. Doss did, in fact, initiate her dispute with that specific tradeline directly with NCA.  (Doc. 55-1).  The court cannot consider evidence attached to NCA's pleading in deciding Trans Union's motion to dismiss.  *See* Fed. R. Civ. P. 12(d).  Even if the court could, NCA's evidence does not give any information about the other tradeline that Ms. Doss asserts Trans Union erroneously reported as disputed.  (*See* doc. 31 at 4–5 ¶¶ 17–22).

benefit." (Citation omitted). The district court adopted a different part of the report and recommendation and declined to opine on whether a dispute notation could be considered "information" for FCRA purposes. *Hardnett*, 2021 WL 2201301, at \*3 n.4 (N.D. Ga. Apr. 26, 2021).

The FCRA does not define the word "information." However, it does define "consumer report" to mean "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" certain types of credit or insurance, employment purposes, or other authorized purposes. 15 U.S.C. § 1681a(d)(1). The statute also defines a "file" to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). Trans Union does not address these definitions of "consumer report" and "file" or their bearing on the definition of "information." (*See generally* doc. 51 at 17–21).

Given the broad use of the word "information" within the definitions of "consumer report" and "file," the court is inclined to find that "information" includes dispute notations. Clearly, Trans Union "recorded and retained" the dispute

notation.  *See* 15 U.S.C. § 1681a(g).  And Ms. Doss has alleged that a consumer's dispute of a tradeline makes a consumer ineligible for a mortgage loan or refinance by any "conventional lender."  (Doc. 31 at 5 ¶ 23).  Assuming that is true, the dispute notation therefore bears on the consumer's credit worthiness and serves "as a factor in establishing the consumer's eligibility for . . . credit."    15 U.S.C. § 1681a(d)(1)(A).  The court is not prepared to hold as a matter of law that a dispute notation cannot be considered information without more fulsome briefing on that issue.

Trans Union's final argument is that Ms. Doss's claims of willful violations of the FCRA should be dismissed because, even if Trans Union violated the FCRA, Ms. Doss has not pleaded that it did so based on an objectively unreasonable reading of the statute.  (Doc. 51 at 22–24).  The FCRA imposes liability for both negligent and willful violations of the statute.  15 U.S.C. §§ 1681n, 1681o.  To establish a willful violation, the plaintiff must show that the credit reporting agency's violation was either knowing or reckless.  *Losch*, 995 F.3d at 947.  "A credit-reporting agency recklessly violates the Act if it takes an action that is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Id.* (quotation marks omitted).  A defendant who "followed

an interpretation that could reasonably have found support in the courts" has not acted willfully. *Id.* (quotation marks omitted).

The FCRA does not speak clearly on the duties of a credit reporting agency in situations like the one presented by this case. No published authority from the Eleventh Circuit or the Supreme Court has interpreted the FCRA with respect to the questions presented by this case. And Trans Union's position on the requirements of the FCRA has support by various district courts, as cited in its motion to dismiss. (*See generally* doc. 51). Although this court disagrees with those decisions, Trans Union's position cannot be willful in these circumstances.

Accordingly, the court **GRANTS IN PART** and **DENIES IN PART** Trans Union's motion to dismiss. The court **DENIES** Trans Union's motion to dismiss Ms. Doss's claims that it negligently violated the FCRA, but **GRANTS** the motion to dismiss her claims that it willfully violated the FCRA.

## III. CONCLUSION

The court **DENIES** NCA's motion for judgment on the pleadings. The court **GRANTS IN PART** and **DENIES IN PART** Trans Union's motion to dismiss. The court **WILL DISMISS** Count Ten, which alleges Trans Union willfully violated the FCRA, **WITHOUT PREJUDICE**.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this April 8, 2022.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE